## Mose Robbins v. The State.

### No. 4590.   Decided January 30, 1918.

**1.—Murder—Former Statute—Charge of Court.**

Where appellant was convicted of murder in the second degree under the former statute defining the degrees of murder, and there was no error in the court's charge, there is no reversible error on that ground.

**2.—Same—Evidence—Res Gestae—Dying Declarations.**

Where, upon trial of murder, the dying statements of deceased were introduced in evidence and also as res gestae, there was no error on that ground.

**3.—Same—Evidence—Res Gestae.**

Where the statement of deceased was made at such time and under such circumstances as to constitute res gestae, there was no error in admitting it in evidence.

**4.—Same—Evidence—Conversation.**

Upon trial of murder there was no error in admitting in evidence a conversation between one of the deceased and his wife, with reference to threats by the defendant, and which was made in the presence and hearing of the defendant.

**5.—Same—Evidence—Declarations of Defendant—Contradicting Testimony.**

Upon trial of murder of another, whom he killed at the time he killed his wife, there was no error in admitting testimony that the defendant induced his wife, whom he afterwards killed with this other party, to come to where the defendant was at work to prevent her from testifying against him in a case of assault to murder her; there being other testimony showing his hostility against her; to contradict his testimony that he was friendly to his wife, etc., and which occurred shortly before the homicide.

**6.—Same—Evidence—Complaints of Deceased.**

Where, upon trial of murder charging the defendant with the killing of another party, whom he killed at the time he also killed his, defendant's, wife, the State was permitted to show that nearly every week, for a year or two before the homicide, defendant's wife complained to the witness of defendant's ill-treatment of her, these facts being communicated to the defendant, there is no reversible error.

**7.—Same—Evidence—Reproduction of Testimony.**

Where, upon trial of murder, defendant had been tried before for the same offense and a State's witness had given material testimony against him, and it was shown upon the instant trial that this witness was out of this State, there was no error in permitting the State, after proving up the witness' former testimony, to introduce the same in evidence on this trial, and this court will not follow the cases of Cline v. State, 36 Texas Crim. Rep., 320, and Kemper v. State, 63 id., 7, holding to the contrary and which have been overruled.

**8.—Same—Evidence—Husband and Wife—Dying Declarations Not Res Gestae.**

Where, upon trial of murder, the defendant was prosecuted, not for killing his wife but another, as shown by the record, although both were killed at the same time, but not by the same shot, it was reversible error to admit in evidence said wife's dying declarations as to the facts which showed defendant's

acts in killing her. See opinion of Presiding Judge Davidson, taking the view that this case is only manslaughter.

Appeal from the District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction of murder in the second degree; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson, Elmo Johnson, Roy Johnson* and *Marsene Johnson, Jr.,* for appellant.—On question of res gestae: Robbins v. State, 73 Texas Crim. Rep., 367; Wooley v. State, 64 S. W. Rep., 1054; Gray v. State, 47 Texas Crim. Rep., 375; Clark v. State, 56 id., 293.

On question of former transaction: Murff v. State, 76 Texas Crim. Rep., 5.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of other offense and motive: Lane v. State, 59 Texas Crim. Rep., 595.

PRENDERGAST, JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at ninety-nine years in the penitentiary.

The offense was alleged to have been committed before our murder statute was changed doing away with the two degrees of murder.

It appears that the appellant has been tried several times. In every instance before this he was convicted of murder in the first degree with the death penalty assessed. This is the second appeal. The first is reported in 73 Texas Crim. Rep., 367. This trial was in accordance with the previous decision herein except two questions which did not arise on that trial. In order to pass upon the questions herein raised it is unnecessary to make a statement of the testimony. The charge of the court is an admirable one and correctly submits to the jury every issue that was raised by the testimony.

However, it is sufficient to say that the evidence on behalf of the State was clear and amply sufficient to show that appellant was guilty of the murder of Mr. Blake, the deceased, and also his, defendant's, wife, Jane, at the same time and in the same transaction. In fact, that it showed appellant assassinated both said Blake and his wife. His contention and testimony, if believed, would have shown that he was entirely justifiable in that he killed deceased as he took him in the very act of sexual intercourse with his wife. The jury, however, did not believe his contention and testimony. In fact, the testimony was clearly sufficient to disprove his contention and testimony. All these matters were for the jury and the lower court.

Appellant's bills 2 and 3 show that he objected for various reasons to the testimony of Dr. O'Farrell to certain statements of the deceased.

The court expressly held that this testimony was admissible both as res gestae of the killing and as the dying statements of deceased. The testimony was clearly sufficient to sustain the court's holding on both grounds. The same question was decided against appellant on the previous appeal.

Appellant's bill 4 shows that he objected to the testimony of Dr. O'Farrell as to the res gestae statement of appellant's wife to the effect that when he told her Blake, deceased, was going to die, that she said, "Poor man, poor man, he lost his life trying to protect me." And his bill No. 6 shows that he objected to the same testimony of Mr. Wooley. The court below held that this statement was made to both of these witnesses voluntarily and at such time and under such circumstances as to constitute it res gestae. The ruling of the trial judge was correct in both instances, as was also held on the previous appeal herein. The authorities are there cited. It is unnecessary to repeat them.

His 5th bill shows he objected to the testimony of Mr. Young, in substance that he, Young, heard deceased's wife complaining to Mr. Blake, deceased, several hours before the killing, wherein she requested Mr. Blake to not let Mr. Blair go to Rosenberg, and when he asked her why, she said that Mose (appellant), was always threatening to kill her and that if Mr. Blair went Mose would hurt her, and that she would not stay there. That Mr. Blake said to her, "Don't go, go upstairs (in the gin house), and stay until Mr. Blair comes back." The court properly admitted this testimony, stating that it was admitted because the conversation was in the presence and hearing of appellant. The evidence was sufficient to show that it was in his hearing and presence. Under the circumstances, this testimony was admissible. The same character of testimony of Mr. Robt. Blair was held admissible on the former appeal.

The testimony clearly shows that several months before this killing appellant had assaulted and seriously and severely cut up his wife, in Matagorda County where they then lived and that he was indicted for assault with intent to murder her; that on that occasion, after he had so cut up his wife, he was told that he had killed her and he told Mr. Carr, the officer, that he was glad, that he intended to, and would kill her. There was other testimony clearly showing that about ten days before this killing, while he was at work for Mr. Blake (deceased), and his partner in Fort Bend County, that he went to Bay City in Matagorda County where his wife was and got her to come to appellant's camp to do the cooking and that this was about two weeks before his said case for assault on his wife was set for trial, and that his purpose in getting her away from Matagorda County was to prevent her testifying against him in that case; and it is the State's contention, and the evidence tends to show that he intended to go to the extent of killing her to prevent her testifying in that case. There was other testimony showing his hostility against her shortly before he killed her and Blake and his

threat to kill her. He denied all these facts and claimed that he and his wife were on the best of terms at all times up to the very time he killed her and appellant. The testimony, therefore, of Mr. Carr, as stated above, under the circumstances, was clearly admissible, as held by the trial judge.

Also the testimony of Mr. Carr as to the effect that appellant's wife had, nearly every week for a year or two before this killing, complained to him of appellant's ill treatment of her. The evidence and qualification of the bill shows that the officer communicated these complaints to defendant at the time, and under the circumstances of this case as held on the previous trial, the testimony of the officer, Mr. Carr, was admissible.

As stated, all these questions were in substance and effect held against appellant on his previous appeal. They are sufficiently stated in said opinion.

We now come to the two questions which were not raised on the previous trial. On a previous trial of appellant the witness, Robert Blair, gave material testimony against him in favor of the State. On this trial it was shown that this witness was out of this State. That he was in Idaho and his presence could not be had. Thereupon the State, after proving up his former testimony, the court permitted its introduction on this trial. Appellant objected on the ground that it violated his constitutional right to be confronted by the witness personally against him in open court. This question, in a great many decisions of this court, has been held against appellant. In 1 Branch's Annotated Penal Code, section 76, is collated a large number of these decisions. It is unnecessary to copy them here. They will be, and are now, adhered to by this court; and it will not follow the overruled Cline case, 36 Texas Crim. Rep., 320, nor the Kemper case, 63 Texas Crim. Rep., 1, to the contrary holding. It is unnecessary to again discuss the question as it has been so many times discussed and the authorities cited in the said decisions collated by Mr. Branch.

The only other question raised is by appellant's 8th bill, which shows that over his objections, the court permitted Dr. Brooks to testify what appellant's wife, Jane, said to him, to the effect that she went into the gin house to be in a safe place so that she could have protection from her husband. That she went upstairs and got to bed and that the next thing she knew appellant was standing over her and that she was so close that when he shot it set fire to her clothes. This testimony was objected to by appellant because it was hearsay, not res gestae, and that it was in effect allowing the wife to testify against her husband. The court admitted this testimony as her dying declaration. The statute, article 808, Code of Criminal Procedure, authorizes the dying declaration of a deceased person to be introduced in a case against an accused where he is charged with killing such deceased person. In this case appellant was not indicted, nor on trial, for killing his wife, but he was

on trial for killing the deceased, Blake. Again, article 795, Code of Criminal Procedure, expressly prohibits the wife from testifying against her husband in any criminal prosecution except for an offense committed by him against her. This prosecution, as stated, was not a prosecution against appellant for the killing of his wife. It is true that he killed both, deceased and his wife, at the same time and in the same transaction, but not by the same shot. Said dying declaration by her was prohibited under both articles. Under no contingency shown in this record was said testimony by Dr. Brooks admissible.

For this error alone the judgment is reversed and the cause remanded.

*Reversed and remanded.*

MORROW, Judge.—I concur in the reversal on the ground that the evidence of Dr. Brooks mentioned in the above opinion was not admissible. On the other questions discussed I express no opinion, except that I think the reproduction of evidence was proper. Young v. State, 82 Texas Crim Rep., 257, 199 S. W. Rep., 479.

DAVIDSON, Presiding Judge (partly concurring).—I concur in the reversal of the judgment. There are other matters which, in my judgment, are equally as cogent why this judgment should be reversed. I am firmly convinced, as I was upon the former appeal, that this is not a case of murder from any viewpoint of the evidence. It is not my purpose to go into a detailed statement of the facts, but will state just enough of the undisputed facts to show why I think the judgment ought to be reversed on the proposition I have asserted.

The defendant, a negro, was working for two white men, one of whom was the deceased. The white men had a contract to build roads in Fort Bend County. Appellant brought his wife, at the suggestion or instigation of deceased, from Matagorda County to the camp in Fort Bend County to cook. Trouble seems to have arisen between defendant and his wife. Appellant went, on the evening preceding the homicide at night, to a railroad station nearby. Upon returning he ascertained that his wife had been taken by deceased to his bed room, or to a room deceased occupied as a bed room. Upon ascertaining this appellant obtained a pistol and went to the room. Appellant's wife was sleeping in the same room in which deceased was sleeping, their beds being a few feet apart. The deceased claimed that he took appellant's wife to his room to protect her against the threats of appellant. Appellant believed he took her for other purposes. Deceased had a cot in the same room and there was evidence of it having been occupied, and on it was found a pistol. The deceased was shot in the back, and appellant's wife was shot in front. The dying declaration or res gestae statement of deceased was, in substance, that when he ascertained appellant was in the room, he, deceased, went in a stooping position from his bed to that of appellant's wife to notify her that defendant was in the room, and

while going in a bending or stooping position to her bed he was shot in the back by appellant. Appellant said deceased was on his knees as he approached the bed of appellant's wife. From this shot he died. He did not carry his pistol with him; but left it in his bed when he started to the bed of appellant's wife.

Appellant's version of the matter was that he saw the deceased go to his wife's bed, and immediately after reaching it engaged her in the act of sexual intercourse, and he began shooting. Deceased was shot in the back and his wife in the front. Both died.

It is undisputed that the wife of appellant was in the bed room of the deceased. The deceased was either in bed with the wife of appellant, or approaching her bed in a bending or stooping attitude when shot. If appellant's theory is right he was entitled to an acquittal. If the State's evidence is correct, and the statement of deceased and the other facts are to be believed, there could be no higher degree of homicide than manslaughter. If one man takes the wife of another to his bed room at night, and the husband goes into the room where they are and kills under circumstances asserted by the State, this can not constitute murder. If so, the statutes on manslaughter have been vainly written. This judgment ought to have been reversed on the facts, and it ought to be held that from no viewpoint of the facts can there be a higher case than manslaughter, giving the State the benefit of the highest possible credit for its testimony.

I concur in the reversal, and desire to add these few observations why I believe this judgment ought to have been reversed on the facts.