PEOPLE v LOVE

Docket No. 72384. Argued November 12, 1985 (Calendar No. 1).
    Decided August 7, 1986.

Abner M. Love was convicted in the Recorder's Court of Detroit
    of second-degree murder, possession of a firearm during the
    commission of a felony, and kidnapping. The court, Clarence
    Laster, Jr., J., denied the defendant's motion to exclude testi-
    mony of his wife under the spousal privilege statute, holding
    first that the spousal privilege did not apply, and then that his
    wife had waived the privilege when she testified at his prelimi-
    nary examination. The Court of Appeals, BRONSON, P.J., and
    MACKENZIE and SANBORN, JJ., affirmed (Docket No. 60079). The
    defendant appeals.

    In opinions by Justice CAVANAGH, joined by Justice LEVIN, by
    Chief Justice WILLIAMS, joined by Justice BRICKLEY, and by
    Justice BOYLE, joined by Justice RILEY, the Supreme Court held:

    The defendant's convictions of second-degree murder and
    possession of a firearm during the commission of a felony are
    reversed; the defendant's conviction of kidnapping is affirmed.

    Justice CAVANAGH, joined by Justice LEVIN, stated that the
    spousal privilege provided in § 2162 of the Revised Judicature
    Act bars a spouse from testifying as to an offense committed
    against a third person although the defendant-husband also
    committed an offense against the witness-spouse during the
    same criminal transaction; and, while the statute provides that
    the witness-spouse may testify as to an offense committed
    against her, she may voluntarily refuse and cannot be com-
    pelled to testify.

    1. The spousal privilege provided in the Revised Judicature
    Act precludes examination of one spouse as a witness against
    the other without the permission of the nonwitness-spouse
    except in specified instances, including where the cause of
    action grows out of a personal wrong or injury done by one
    spouse to the other. The privilege can be asserted only while
    the spouses are legally married and precludes testimony re-
    gardless of whether the events at issue occurred before or
    during the marriage.

    2. Because the spousal privilege may result in excluding

otherwise relevant and admissible evidence, it should be defined narrowly, while exceptions permitting testimony should be construed broadly. The spousal privilege recognizes that spouses are not ordinary witnesses when pitted against each other. It has been justified on the basis of the need to preserve marital harmony. The exception which permits a willing spouse to testify against the other spouse where the cause of action grows out of a personal injury or wrong done by one spouse to the other is permissive. While it allows a victim-spouse to testify against a defendant-spouse, it does not require such testimony. Although there may be a presumption that marital harmony no longer exists, the fact of the wrong done by the defendant-spouse to the victim-spouse is not conclusive. Where the victim-spouse does not wish to testify, the purpose of the statute should not be undercut by interpreting the exception to compel testimony.

3. In this case, the defendant properly asserted his spousal privilege at the preliminary examination and at trial to prevent his wife's testimony regarding the murder and felony-firearm charges. Because she was the only witness to testify, the admission of her testimony cannot be deemed harmless, and the defendant's convictions of those charges must be reversed. With respect to the charge of kidnapping, the defendant's wife unequivocally indicated during trial that she did not wish to testify, and there is no indication that her refusal stemmed from a fear of the defendant. Thus, the trial court should not have compelled her testimony. The record does not affirmatively show that Mrs. Love objected to testifying at the preliminary examination, however, and remand should be required to determine whether her testimony at that proceeding was voluntary.

Chief Justice WILLIAMS, joined by Justice BRICKLEY, concurring in part and dissenting in part, stated that they agreed with Justice CAVANAGH's conclusion that the statute bars a spouse from testifying as to an offense committed against a third person although the defendant-husband also committed an offense against the witness-spouse during the same criminal transaction; and, that they so concluded because the statutory exception to the privilege to exclude spousal testimony cannot grow out of a personal wrong or injury done by one spouse to the other which did not exist at the time the cause of action for which a defendant is being tried, in this case, murder, arose, the defendant's convictions of second-degree murder and possession of a firearm during the commission of a felony should be reversed. However, because the kidnapping by the defendant of

his wife was a personal wrong or injury giving rise to the exception, and, thus, the defendant's wife could be compelled to testify, the defendant's conviction of kidnapping should be affirmed.

Justice BOYLE, joined by Justice RILEY, dissenting, stated that by changing the common-law rule concerning the testimonial incompetencies of husband and wife, the Legislature made spouses conditionally competent to testify against each other, the condition being the consent of the other spouse. Thus, the statutory provision cannot be classified as a true privilege; rather, it is a rule of incompetency which vests in a party-spouse the ability to remove the incompetency, and permits a nonconsenting party-spouse to prevent the other spouse from being called as a witness. Exceptions intended to remove the conditional disability of a witness-spouse and make the witness-spouse as competent and compellable as any other witness are clear, and include cases of prosecution of crimes committed against the children of either or both, and cases in which the cause of action grows out of a personal wrong or injury done by one spouse to the other. Crimes involving third persons which are part of the criminal transaction against the spouse "grow out of a personal wrong or injury" done to the spouse and are within the statutory exception.

Affirmed in part and reversed in part.

Justice ARCHER took no part in the decision of this case.

127 Mich App 596; 339 NW2d 493 (1983) affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, for the people.

*Gerald S. Surowiec* for the defendant.

CAVANAGH, J. Defendant was convicted, following a bench trial, of second-degree murder[1] and possession of a firearm during the commission of a felony[2] for the killing of his estranged wife's friend, Johnny McQueen. He was also convicted of

---

[1] MCL 750.317; MSA 28.549.

[2] MCL 750.227b; MSA 28.424(2).

kidnapping[3] his wife, Sue Love, after committing
the murder. Defendant received two 5½- to 20-
year sentences for the murder and kidnapping,
and the mandatory two-year consecutive sentence
for felony-firearm. The Court of Appeals affirmed.
127 Mich App 596; 339 NW2d 493 (1983). In re-
sponse to defendant's request for review, this
Court ordered appointment of counsel. We subse-
quently granted defendant's delayed application
for leave to appeal. 422 Mich 856 (1985).

The prosecution's case rested solely on the testi-
mony of Mrs. Love, who did not wish to testify.
Defendant presents two issues for our considera-
tion:

1) Can a defendant assert the spousal privilege
provided in MCL 600.2162; MSA 27A.2162 to pre-
vent his spouse from testifying as to an offense
committed against a third person where the defen-
dant also committed an offense against the wit-
ness-spouse during the same criminal transaction?

2) When the privilege does not bar spousal testi-
mony, can the witness-spouse be compelled to
testify against the defendant-spouse?

I

The Court of Appeals aptly summarized the
facts:

The major witness presented by the prosecution
was defendant's wife, Sue Love. Her testimony
established that she was separated from defendant
and had begun divorce proceedings at the end of
October, 1980. Defendant arrived at Ms. Love's
home after her afternoon work-shift sometime
around 11 or 11:30 P.M. on October 30, 1980. He

---

[3] MCL 750.349; MSA 28.581.

accused his estranged wife of "fooling around"
with her co-worker, Johnny McQueen. Defendant
telephoned Mr. McQueen to ask him to come over
to his wife's house to discuss his relationship with
defendant's wife. Mr. McQueen arrived about 20
minutes later.

Defendant, his wife, and Mr. McQueen went
outdoors and into Mr. McQueen's car where they
talked. Mr. McQueen sat in the front seat of the
car with Ms. Love. Defendant sat in the back seat.
After some discussion followed by a few moments
of silence, defendant asked Mr. McQueen for a
cigarette. After Mr. McQueen gave defendant a
cigarette, defendant pulled a nickel-plated hand-
gun out of his pocket and shot Mr. McQueen at
close range in the temple. Defendant then pushed
Mr. McQueen's body out of the car, took the
driver's seat, pointed the gun in his wife's direc-
tion, and threatened to harm her if she tried to
leave.

Defendant drove aimlessly for some time before
stopping at a vacant house for about one-half hour.
Defendant then forced his wife back into Mr.
McQueen's automobile, drove aimlessly again, and
went to the home of some friends after the car ran
out of gas. Ms. Love testified that defendant did
not threaten her during this period, but did
threaten her initially.

Prior to Ms. Love's testimony, defense counsel
had moved to suppress her testimony regarding
the killing of McQueen. Defendant argued that her
testimony regarding that crime was excludable
under the spousal privilege statute.

\* \* \*

The trial court denied the motion, finding a New
Jersey case with a similar fact situation persua-
sive. *State v Briley,* 53 NJ 498; 251 A2d 442 (1969).
The trial court also found that defendant's spousal
privilege had been waived when Ms. Love testified
at the preliminary examination. At both the pre-
liminary examination and trial, Ms. Love stated
on the record that she did not wish to testify

against her husband.[4] Furthermore, defendant objected and stated that he did not consent to a waiver of the privilege. [127 Mich App 598-600.]

The spousal privilege is contained in MCL 600.2162; MSA 27A.2162, which states in pertinent part:

A husband shall not be examined as a witness for or against his wife without her consent; *nor a wife for or against her husband without his consent, except in suits for divorce and in cases* of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and *where the cause of action grows out of a personal wrong or injury done by one to the other* . . . . [Emphasis added.]

The statute vests the privilege of precluding spousal testimony in the nonwitness-spouse. The privilege can be asserted only while the spouses are legally married. It precludes all testimony regardless of whether the events at issue occurred before or during the marriage. *People v Wadkins,* 101 Mich App 272, 282-283; 300 NW2d 542 (1980).[5]

The parties agree that Mrs. Love could voluntarily testify concerning the kidnapping prosecution since it grew out of a personal wrong done to her by defendant. The Court of Appeals concluded that

---

[4] As will be more fully discussed, the record is unclear as to whether Mrs. Love voluntarily testified at the preliminary examination.

[5] MCL 600.2162; MSA 27A.2162 also contains the "marital communications" privilege. This privilege prevents examination as to any confidential communication made by one spouse to the other during the marriage, unless both spouses consent. Unlike the spousal privilege, the marital communications privilege may be asserted after the marriage has ended, as long as the communication was made during the marriage. *Wadkins,* p 330. This privilege is not at issue here since Mrs. Love only testified regarding acts committed by defendant in her presence.

Mrs. Love could also testify concerning the murder and felony-firearm charges. The Court initially noted that the modern justification for the spousal privilege is preservation of marital harmony. However, the privilege excludes otherwise relevant and admissible evidence. Thus, the privilege should be narrowly defined, while the exceptions permitting testimony should be broadly construed. The Court concluded that a crime committed against a third person during the same criminal transaction as a crime committed against the witness-spouse "grows out of a personal wrong or injury done by one [spouse] to the other." The Court noted that requiring a victim-spouse to testify concerning all offenses, rather than only those committed against her, would not significantly decrease marital harmony. Moreover, this holding was in accord with the "overwhelming weight of authority from other jurisdictions." 127 Mich App 600-603.[6]

The Court of Appeals further held that the trial court could compel Mrs. Love to testify. *People v Sykes,* 117 Mich App 117; 323 NW2d 617 (1982), which had reached a contrary conclusion, was rejected. The Court reasoned that a spouse is equivalent to any other witness who may be compelled to testify under GCR 1963, 506.[7] A contrary conclusion would broaden the spousal privilege and "contravene[ ] the principle that the court should employ all rational means for ascertaining the truth." It was also noted that little marital harmony probably remained in this case since divorce proceedings were pending at the time of the incident and at trial. 127 Mich App 603-605.

---

[6] A similar conclusion was reached in *People v Vieau,* 136 Mich App 670; 357 NW2d 736 (1984).

[7] GCR 1963, 506.1 provided that a trial court may order any witness to testify. If the witness refuses to testify regarding any nonprivileged matter, the refusal may be considered a contempt of court. GCR 1963, 506.6(1). See now MCR 2.506(A)(1), (E)(2).

II

The prosecution initially urges us to strike down MCL 600.2162; MSA 27A.2162 because it conflicts with MRE 601:

> Unless the court finds after questioning a person that he does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

The prosecution maintains that the spousal privilege statute renders persons incompetent to testify merely because they are married. In contrast, MRE 601 states that every person is competent, except in very limited circumstances. Since a rule of evidence is at issue and the statute conflicts with a court rule, the statute must fall. MRE 101; MCR 1.104; *Perin v Peuler (On Rehearing)*, 373 Mich 531, 540-543; 130 NW2d 4 (1964); *People v Jackson,* 391 Mich 323, 336; 217 NW2d 22 (1974). We reject this argument.

The spousal privilege is a product of ancient common-law rules of incompetency. As explained in *Trammel v United States,* 445 US 40, 43-44; 100 S Ct 906; 63 L Ed 2d 186 (1980):

> The privilege claimed by petitioner has ancient roots. Writing in 1628, Lord Coke observed that "it hath been resolved by the Justices that a wife cannot be produced either against or for her husband." [Citations omitted.] This spousal disqualification sprang from two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal exis-

tence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife.

Despite its medieval origins, this rule of spousal disqualification remained intact in most common-law jurisdictions well into the 19th century.

See also *People v Zabijak,* 285 Mich 164, 175-176; 280 NW 149 (1938).

By 1846, Michigan had enacted laws which removed the absolute disqualification of spouses, while retaining the privilege of preventing spousal testimony.[8] The present statute on witness competency provides in pertinent part:

> No person shall be excluded from giving evidence on any matter, civil or criminal . . . by reason of marital or other relationship to any party thereto . . . . [MCL 600.2158; MSA 27A.2158.]

MRE 601 reflects the substance of this statute.

It is more appropriate to describe the statutory spousal privilege as a true privilege, rather than a rule of incompetency. *Trammel,* p 44; McCormick, Evidence (2d ed), § 66, pp 144-145. See also *People v Marble,* 38 Mich 117, 122-123 (1878). Privileges are governed by common law, except as modified by statute or court rule. MRE 501. Since there is no court rule governing marital privileges, the statute controls.

The prosecution also urges us to abrogate the statutory spousal privilege under our rule-making authority. We recognize that the privilege has been sharply criticized,[9] but decline the invitation to abrogate it. The modern justification for the

[8] See 1846 RS, ch 102, §§ 99, 102.
[9] See *Trammel,* pp 44-45, 51-53, and authorities cited.

privilege is the preservation of marital harmony which could be disrupted if spouses are required to testify for or against each other. *Trammel, supra; Sykes, supra,* 122. When faced with the opportunity to abrogate the spousal privilege in the federal courts, the United States Supreme Court retained it, but vested the privilege in the witness-spouse. *Trammel,* p 53. The Legislature has repeatedly reenacted the spousal privilege[10] and broadened the exceptions thereto when deemed necessary.[11] Given this longstanding history and the still-viable justification for the existence of the privilege, we limit our role to interpreting MCL 600.2162; MSA 27A.2162.

### III

### A

We agree with the Court of Appeals that privileges should be narrowly defined and the exceptions thereto broadly construed:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that "the public . . . has a right to every man's evidence." As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all ra-

[10] 1857 CL 4339, 4342; 1871 CL 5966, 5969; How Stat 7543, 7546; 1897 CL 10210, 10213, 10214; 1915 CL 12551, 12555; 1929 CL 14217, 14221; 1948 CL 617.63, 617.67.

[11] 1869 PA 84 added a lengthy exception for actions involving title to property. 1885 PA 211 added the "personal wrong or injury" exception. In response to *People v Quanstrom,* 93 Mich 254; 53 NW 165 (1892), prosecutions for bigamy were excepted by 1897 PA 212. 1915 PA 314, ch xvii, § 67, added suits for divorce. 1939 PA 82 added an exception for crimes committed against the children of either or both spouses.

tional means for ascertaining truth." [*Trammel,* p 50. Citations omitted.]

However, we cannot contort the unambiguous words of a statute beyond their plain and ordinary meaning. The intent of the Legislature, as expressed by the words used in the statute, is controlling.

This Court has interpreted the statutory spousal privilege on several occasions, although not in the particular factual context presented here.[12] In *People v Quanstrom,* 93 Mich 254; 53 NW 165 (1892), defendant argued that his wife could not file a complaint against him for bigamy or testify against him. The spousal privilege statute at that time did not contain a specific exception for prosecutions for bigamy. However, the statute, as now, permitted spousal testimony "in cases . . . where the cause of action grows out of a personal wrong or injury done by one to the other." The *Quanstrom* Court agreed that bigamy did not involve a wrong committed against the wife:

> The language of the rule at common law was as broad as the language "personal injury" in our statute, and that language meant, and was held to

[12] In *People v Marble,* 38 Mich 117 (1878), defendant wife aided and abetted an assault upon her husband and the murder of the husband's companion. The husband was permitted to testify against his wife as to the murder since their marriage had ended prior to trial.

In *People v Zabijak,* 285 Mich 164; 280 NW 149 (1938), the defendant was tried for the murder of his mother-in-law. The defendant's wife was permitted to testify as to threats made by the defendant against her and her mother since the defendant and his wife were divorced prior to trial and the threats were not confidential communications.

In *People v Clarke,* 366 Mich 209; 114 NW2d 338 (1962), the defendant's wife signed a complaint and testified against him for taking indecent liberties with a minor child. The child had resided with the defendant and his wife, but was not their child. The *Clarke* Court reversed the defendant's conviction because the spousal privilege statute only excepted prosecutions involving the child of either or both spouses.

mean, violence, either actual or constructive, to the person, and by a long line of decisions the wife was not allowed to give testimony in prosecutions for bigamy, or any other crime not involving personal violence or corporeal injury to her. . . . *A cause of action growing out of a personal wrong is one designed to protect or secure some individual right. The right, as well as the wrong, must pertain to the person. It must be one that is purely personal in its character, and in no sense can the exception here be said to embrace public wrongs,* which are personal only in the sense that they wound the feelings or annoy or humiliate, but inflict no injury upon the person.

\* \* \*

In the cases excluding the testimony of the wife, it is held that the legislature had imported into the statute the common-law rule, and that, before any departure from that rule . . . can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit. The clear weight of authority . . . is against the admissibility of the testimony. *If not a crime against her, it certainly is not a wrong which is personal to her.* [*Id.,* pp 256-257, 260. Emphasis added.]

In response, the Legislature amended the spousal privilege statute to except bigamy prosecutions. 1897 PA 212. However, the exception for suits "where the cause of action grows out of a personal wrong or injury done by one to the other" has not been modified.

Here, we must determine whether the state's "cause of action" against defendant for murder and felony-firearm grew out of defendant's kidnapping of Mrs. Love. The phrase "grows out of" indicates that the particular cause of action must be for the personal injury inflicted upon one spouse by the other. The prosecution's cause of action for kidnapping grew out of the personal

wrong inflicted upon Mrs. Love. The cause of action for murder and felony-firearm grew out of the personal injury inflicted upon Mr. McQueen. The fact that the three offenses occurred during the same criminal transaction is irrelevant to the determination of which cause of action grew out of which personal wrong or injury. This interpretation is consistent with *Quanstrom's* requirement that the crime charged must have been committed against the witness-spouse to come within the "personal wrong or injury" exception.

B

The lower courts found *State v Briley, supra,* to be very persuasive authority. There, the defendant murdered his estranged wife's male companion and then assaulted her with a gun. The defendant asserted his statutory spousal privilege to prevent his wife's testimony concerning the murder. The New Jersey Supreme Court held that the privilege permitted the wife to testify on both the murder and assault charges.

Although *Briley* is factually similar, its result is distinguishable on the basis of the particular wording of the statute at issue. Rule 23(2) of the New Jersey Rules of Evidence provided in pertinent part:

> The spouse of the accused in a criminal action shall not testify in such action . . . unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse . . . or (c) such spouse is the complainant. [NJS 2A:84A-17(2).]

Ms. Briley's testimony concerning the assault perpetrated against her was clearly permitted un-

der subsection (c). As to the murder charge, subsection (b) permitted spousal testimony in any criminal action where the accused was charged with an offense against the spouse. Unlike MCL 600.2162; MSA 27A.2162, the New Jersey statute did not require that the criminal action be for the offense committed against the spouse. The *Briley* court interpreted the statute as requiring that the offense committed against the spouse be committed during the same criminal transaction as the offense for which the defendant was on trial. 53 NJ 505-507.[13]

The Court of Appeals correctly noted that many jurisdictions permit a witness-spouse to testify concerning an offense committed against a third party where the defendant also committed an offense against the spouse during the same criminal transaction. See 36 ALR3d 820. The decisions are not unanimous, however.[14] Like *Briley,* many cases are distinguishable because the spousal privilege statutes at issue are not identical to MCL 600.2162; MSA 27A.2162.[15] In those jurisdictions where the

---

[13] The *Briley* court also required that the defendant be formally charged with the offense committed against the spouse, although it was not necessary that the defendant be tried for the offense committed against the third person. *Id.* Cf. *State v Eason,* 138 NJ Super 249; 350 A2d 506 (1975) (wife could not testify concerning murder of third person since defendant was never formally charged with a crime committed against his wife).

[14] See, e.g., *Jenkins v State,* 191 Ark 625; 87 SW2d 78 (1935); *Grier v State,* 158 Ga 321; 123 SE 210 (1924); *State v Manning,* 657 SW2d 301 (Mo App, 1983); *Robbins v State,* 82 Tex Crim App 650; 200 SW 525 (1918); *Young v State,* 603 SW2d 851 (Tex Crim App, 1980); *Zamora v State,* 692 SW2d 161 (Tex App, 1985); *Jenkins v Commonwealth,* 219 Va 764; 250 SE2d 763 (1979), limited in *Brown v Commonwealth,* 223 Va 601; 292 SE2d 319 (1982); *State v Woodrow,* 58 W Va 527; 52 SE 545 (1905).

[15] See 2 Wigmore, Evidence (Chadbourn rev), § 488, n 1, pp 657-696, for summary of spousal privilege statutes and rules.

For example, California's privilege statute specifically requires spousal testimony in prosecutions for "[a] crime against the person . . . of a third person committed in the course of committing a crime

spousal privilege has been abolished or is vested in the witness-spouse alone, the witness-spouse would be permitted to testify in any prosecution against the defendant-spouse, regardless of whether an offense was committed against her. Finally, several courts have disregarded the language of their spousal privilege statutes or rules,[16] or justified admission of spousal testimony on other grounds.[17]

The scope of any statutory privilege must ultimately be determined from the words of the statute. As the *Briley* court noted, relevant and competent spousal testimony should be admitted, as long as "no violence is done to the privilege as expressed in a statutory or judicial rule of evidence . . . ." 53 NJ 506.

---

against the person . . . of the other spouse . . . ." California Evidence Code, § 972(e)(2); *Fortes v People,* 113 Cal App 3d 704; 170 Cal Rptr 292 (1980). Thus, *People v Ford,* 60 Cal 2d 772; 36 Cal Rptr 620; 388 P2d 892 (1964), cert den 377 US 940 (1964), and its progeny, which construed the predecessor of § 972(e)(2), are distinguishable.

In Alaska, the trial court is given the discretion to relax or dispense with evidentiary rules where strict adherence would work an injustice. Alas R Crim P 53; *Loesche v State,* 620 P2d 646 (Alas, 1980).

[16] See, e.g., *State v Mowery,* 1 Ohio St 3d 192; 438 NE2d 897 (1982), cert den 466 US 940 (1984); *State v Thompson,* 88 Wash 2d 518; 564 P2d 315 (1977). In each case, the dissent criticized the majority's failure to interpret the spousal privilege statute or rule as written.

In *People v McGregor,* 635 P2d 912 (Colo App, 1981), the court followed *Trammel* and vested the spousal privilege in the witness-spouse. The states are not bound to follow *Trammel,* however, since it involved the spousal privilege in federal courts.

[17] Several cases have broadly construed the requirement that the offense be committed against the witness-spouse to include crimes committed against the spouse's child or immediate family. See, e.g., *State v Crow,* 104 Ariz 579; 457 P2d 256 (1969), overruled on other grounds *State v Burchett,* 107 Ariz 185; 484 P2d 181 (1971); *O'Loughlin v People,* 90 Colo 368; 10 P2d 543 (1932); *State v Kollenborn,* 304 SW2d 855 (Mo, 1957).

Other cases justify admission on the grounds that the offenses committed against the witness-spouse and third party were so temporally connected as to be part of the res gestae. See, e.g., *Miller v State,* 78 Neb 645; 111 NW 637 (1907); *Willard v State,* 682 SW2d 686, 690 (Tex App, 1984), criticized in *Zamora, supra.* See also *Maiben v State,* 405 So 2d 87, 90 (Miss, 1981).

C

Defendant properly asserted his spousal privilege at both the preliminary examination and trial to prevent Mrs. Love's testimony concerning the murder and felony-firearm charges. Mrs. Love was the only witness who testified on these charges. Defendant did not testify. Thus, the admission of Mrs. Love's testimony cannot be deemed harmless error. Defendant's convictions for murder and felony-firearm must be reversed.

IV

A

Defendant argues that his conviction for kidnapping should also be reversed because his wife was compelled to testify against him. MCL 600.2162; MSA 27A.2162 does not address this issue. Case law from other jurisdictions again is not particularly helpful. Many states have statutes which specifically prevent spouses from being compelled to testify against one other.[18] In those jurisdictions which vest the spousal privilege only in the witness-spouse, that spouse alone determines whether to testify. See *Trammel,* 445 US 53.

The Court of Appeals concluded that where the spousal privilege cannot be invoked to preclude spousal testimony, the witness-spouse can be compelled to testify like any other witness. We disagree. The spousal privilege recognizes that spouses are not ordinary witnesses when one is pitted against the other. For the reasons stated in *Sykes,* we hold that a witness-spouse who volunta-

[18] See statutes compiled in Wigmore, *supra,* § 488, n 1, pp 657-696.

Although *Briley* held that a witness-spouse could be compelled to testify, 53 NJ 509, that holding is dicta because Mrs. Briley testified voluntarily.

rily refuses to testify for or against the other spouse cannot be compelled to testify:

> The existence of the spousal privilege has been justified on the basis of the need to preserve marital harmony, which could be disrupted by requiring one spouse to testify for or against the other spouse when the nontestifying spouse does not consent to such testimony. However, where the cause of action grows out of a personal injury or wrong done by one spouse to the other there is no just reason for preventing the victim-spouse from testifying. In such a case, the need to preserve marital harmony is no longer compelling; presumably the wrong or injury has already disrupted such harmony. It is for these reasons the statute expressly provides that the "spousal privilege" does not apply where the cause of action grows out of a personal wrong or injury done by one spouse to the other.
>
> This exception was carved out for the benefit of the victim-spouse who wishes to testify regarding such a wrong or injury. We hold that the statutory exception to the spousal privilege is a permissive one. It allows the victim-spouse to testify against the defendant-spouse if the victim so desires. We do not interpret the exception to *require* the victim-spouse to testify against the defendant-spouse when the cause of action grows out of a personal injury or wrong done by the defendant to the victim. Although there is a presumption that marital harmony no longer exists when one spouse injures another, this is not conclusive. If the victim-spouse does not want to testify, and there is no indication that such a reluctance stems from fear of the defendant, some marital harmony may still exist between the parties. This is what the marital privilege statute aims to protect, and the statute's purpose should not be undercut by interpreting the exception as requiring the victim's testimony. [117 Mich App 122-123.]

B

Mrs. Love unequivocally indicated at trial that she did not wish to testify. There is no allegation or indication that her refusal stemmed from her fear of the defendant. The trial court should not have compelled her to testify.

The Court of Appeals and the prosecutor during oral arguments before this Court stated that Mrs. Love also did not wish to testify at defendant's preliminary examination. However, the examination transcript and the Recorder's Court record do not affirmatively show such an objection. If Mrs. Love voluntarily testified at the examination, her recorded testimony would have been admissible at trial as substantive evidence pursuant to MRE 804(b)(1).[19] In this event, defendant's conviction for kidnapping must be affirmed since Mrs. Love's testimony at both proceedings was substantially identical.

If Mrs. Love indicated before or at the examination that she did not wish to testify, and the refusal did not stem from her fear of the defendant, she should not have been compelled to testify. In that event, defendant's conviction for kidnapping must be reversed. Mrs. Love was the only prosecution witness who testified concerning that offense at both proceedings.

---

[19] MRE 804(b) provides:

> Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness;
>
> (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

A witness is unavailable where exempted on the ground of privilege from testifying concerning the subject matter of a statement. MRE 804(a)(1).

V

Defendant's convictions for second-degree murder and felony-firearm are reversed. The case should be remanded to the Recorder's Court for a determination of whether defendant's wife voluntarily testified at the preliminary examination. At the conclusion of the hearing, defendant's conviction for kidnapping should be affirmed or reversed accordingly.

LEVIN, J., concurred with CAVANAGH, J.

WILLIAMS, C.J. Justices CAVANAGH and BOYLE reach different conclusions on the two issues before us. We concur with Justice CAVANAGH's conclusion that the defendant's convictions for second-degree murder and felony-firearm should be reversed. We do so for the reason that under any standard of construction, broad or strict, a cause of action cannot "grow[ ] out of a personal wrong or injury done by one to the other" that did not occur at the time of the "cause of action" (murder). Something cannot "grow[ ] out of" something that did not exist. We would therefore reverse defendant's convictions for murder and felony-firearm. However, we agree with Justice BOYLE that a spouse may be compelled to testify, and we would therefore affirm defendant's conviction for kidnapping.

BRICKLEY, J., concurred with WILLIAMS, C.J.

BOYLE, J. (*dissenting*). Contrary to the view of Justice CAVANAGH, I believe that the Michigan statute precluding spousal testimony is not unambiguous and that the Court of Appeals correctly construed the statute.

I

We are presented in this case with a question of statutory interpretation. The statute involved provides that "[a] husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent . . . ." MCL 600.2162; MSA 27A.2162. At issue is the correct construction of the exception to the statute in cases "where the cause of action grows out of a personal wrong or injury done by one to the other . . . ." *Id.* Justice CAVANAGH has excluded from this exception crimes involving third persons which arise out of the same criminal transaction against the spouse pursuant to the authority of *People v Quanstrom,* 93 Mich 254; 53 NW 165 (1892). *Quanstrom* construed this exception narrowly on the basis that the statute codified the privilege at common law. It is well-established that statutes in derogation of the common law are to be strictly construed. *People v Kramer,* 225 Mich 35, 38; 195 NW 802 (1923). Therefore, it is not surprising that the *Quanstrom* Court refused to construe the exceptions to the statute any broader than was recognized at common law.

Since that nineteenth century decision, the privilege against adverse spousal testimony has been significantly criticized as "the merest anachronism in legal theory and an indefensible obstruction to truth in practice." 8 Wigmore, Evidence (McNaughton rev), § 2228, p 221. *Trammel v United States,* 445 US 40, 45; 100 S Ct 906; 63 L Ed 2d 186 (1980).

As Justice CAVANAGH notes, "The spousal privilege is a product of ancient common-law rules of incompetency." *Ante,* p 698.

[The] spousal disqualification sprang from two

canons of medieval jurisprudence: first, the rule
that an accused was not permitted to testify in his
own behalf because of his interest in the proceed-
ing; second, the concept that husband and wife
were one, and that since the woman had no recog-
nized separate legal existence, the husband was
that one. [*Trammel v United States, supra,* 44.]

Wigmore further posits that the privilege
against adverse spousal testimony, as opposed to
disqualification, has for its ancient rationale the
natural and strong repugnance to "condemning a
man by admitting to the witness stand against
him those who lived under his roof, shared the
secrets of his domestic life, depended on him for
sustenance and were almost numbered among his
chattels."[1] 8 Wigmore, Evidence (McNaughton rev),
§ 2227, p 212, § 2228, p 217.

The United States Supreme Court in *Trammel,
supra,* 52, aptly pointed out, however, that

> the ancient foundations for so sweeping a privilege
> have long since disappeared. Nowhere in the com-
> mon-law world—indeed in any modern society—is
> a woman regarded as chattel or demeaned by
> denial of a separate legal identity and the dignity
> associated with recognition as a whole human
> being. Chip by chip, over the years those archaic
> notions have been cast aside so that "[n]o longer is
> the female destined solely for the home and the
> rearing of the family, and only the male for the
> marketplace and the world of ideas." [Citations
> omitted.]

Given that the common-law basis for the statute
is no longer viable, I would not hesitate to depart
from the common-law construction of the excep-

---

[1] The justification for the privilege as it has evolved to this day, is
"its perceived role in fostering the harmony and sanctity of the
marriage relationship." *Trammel, supra.* See also *People v Wadkins,*
101 Mich App 272; 300 NW2d 542 (1980).

tions to the statute, especially since such a construction will oftentimes result in the relevant testimony of the only witness being excluded. Therefore, I would apply the rule of construction set forth by the *Trammel* Court which requires that privileges "be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel, supra,* 50.

As Professor Wigmore explained, the fundamental maxim recognized for more than three centuries is that the public has a right to every man's evidence, and that there is a general duty to give what testimony one is capable of giving. 8 Wigmore, Evidence (McNaughton rev), § 2192, p 70. It follows, therefore, that

> *all privileges of exemption from this duty are exceptional,* and are therefore to be discountenanced. There must be good reason, plainly shown, for their existence. In the interest of developing scientifically the details of the various recognized privileges, judges and lawyers are apt to forget this exceptional nature. The presumption against their extension is not observed in spirit. The trend of the day is to expand them as if they were large and fundamental principles, worthy of pursuit into the remotest analogies. This attitude is an unwholesome one. The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide, without any real necessity, an obstacle to the administration of justice. [*Id.,* p 73. Emphasis in original.]

Applying these principles to the case at bar, I

must concur with the Court of Appeals reasoning that,

> "The spousal privilege in Michigan, like the modern common-law privilege, is narrow in its justification and ought to be correspondingly narrowly construed in its scope."

> The Legislature employed remarkably broad language in drafting the victim-spouse exception quoted above. Because the spousal privilege should be narrowly construed, the exceptions to the spousal privilege stated in the statute should be construed broadly. Therefore, we hold that a crime committed against a third person as part of the same criminal transaction as a crime committed against a spouse "grows out of a personal wrong or injury" done to the spouse and is therefore within the exception. This result is consistent with the policy behind the statute. Marital harmony will not be significantly decreased if the victim-spouse is required to testify on two charges arising from the same criminal transaction rather than merely one. [127 Mich App 596, 602; 339 NW2d 493 (1983). Citations omitted.][2]

---

[2] In reaching this conclusion, the Court of Appeals found very persuasive the decision in *State v Briley*, 53 NJ 498; 251 A2d 442 (1969). Under almost identical factual circumstances, the *Briley* court held:

> If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim. [*Id.*, 507.]

Justice CAVANAGH distinguishes *Briley* from the instant case and rejects its rationale largely on the basis of the statutory language involved in that case which is different from that involved in this case. This distinction makes the rationale of *Briley* no less persuasive.

Unlike Justice CAVANAGH, I do not believe this construction does violence to the words of the statute. To construe the statute otherwise in a situation like the one at bar would effectively secure "to every man, one safe and unquestionable and ever ready accomplice for every imaginable crime." *Trammel, supra,* p 52.

II

I further disagree with Justice CAVANAGH's determination that where an exception to the statute is applicable, the spouse may *not* be compelled to testify. This construction does not flow from the statute.

Justice CAVANAGH points out that by 1846, Michigan had statutorily removed the absolute disqualification of spouses, but retained the privilege of preventing spousal testimony. *Ante,* p 699. Justice CAVANAGH, therefore, would describe the statutory bar against spousal testimony as a true privilege, and not a rule of incompetency.

At least one commentator has advised that the disability of a spouse as a witness *for* the party-spouse should be classified as a disqualification while the rule enabling the party-spouse *to prevent* adverse spousal testimony should be classified as a privilege. McCormick, Evidence (3d ed), § 66, p 161. I do not believe, however, that our statute retaining the spousal privilege can be so neatly divided. Section 2162 states in pertinent part that "[a] husband shall not be examined . . . *for or against* his wife without her consent; nor a wife *for or against* her husband without his consent

In both cases, the language of the statutes are capable of more than one construction and the intents of the respective legislatures are elusive.

Moreover, the view expressed by *Briley* is representative of the view in the majority of states notwithstanding the variations in statutes. 127 Mich App 602-603.

. . . ." MCL 600.2162; MSA 27A.2162.[3] In my view, by changing the common-law rule concerning the testimonial incompetencies of husband and wife, the Legislature did not make them competent witnesses *for or against* each other without restriction. Rather, the Legislature made the spouse *conditionally* competent, that condition being the consent of the other spouse. *People v Knowles,* 15 Mich 408, 413 (1867); *People v Gordon,* 100 Mich 518; 59 NW 322 (1894). Thus, § 2162 cannot be classified as a "true privilege"; the statute is rather a rule of incompetency which vests in the party-spouse the ability to remove the incompe-

---

[3] Section 2162 provides in full:

A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support, and except in cases of desertion or abandonment, and cases arising under section 6 of chapter 83 of the Revised Statutes of 1846, as amended, relating to marriage, and cases where the husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation in such suit, action or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify.

tency, and permits the nonconsenting party-spouse to prevent the witness from being called to the stand. See *People v Werner,* 225 Mich 18; 195 NW 697 (1923).

It follows that in the exceptions to this rule, the Legislature intended to remove the conditional disability of the witness-spouse so that the witness-spouse is as competent and compellable as any other witness. MRE 601; MCR 2.506. No other legislative intent can be so clearly established. These exceptions include "cases of prosecution for a crime committed against the children of either or both, and where the cause of action grows out of a personal wrong or injury done by one [spouse] to the other . . . ." MCL 600.2162; MSA 27A.2162. Contrary to the view of Justice CAVANAGH that the exceptions were carved out for the benefit of the wife who wishes to testify, the exceptions have been created by the rule of necessity, "partly for the protection of the wife in her life and liberty, and partly for the sake of public justice," *People v Zabijak,* 285 Mich 164, 176; 280 NW 149 (1938), and were recognized at common law. *Trammel, supra,* 46, n 7.[4]

The Court of Appeals in this case correctly noted that, "To create a common-law permissive privilege in such a situation broadens the impact of the spousal privilege rather than narrows it. Such a

[4] Indeed, the necessity for parental testimony in prosecutions for child abuse is indicated by the estimate that "over ninety percent of reported child abuse cases occurred in the home, with a parent or parent substitute the perpetrator in eighty-seven and one-tenth percent of these cases." *United States v Allery,* 526 F2d 1362, 1366 (CA 8, 1975), quoting *Evidentiary problems in criminal child abuse prosecutions,* 63 Geo L J 257, 258 (1974). This necessity is also reflected in the Child Protection Law, MCL 722.631; MSA 25.248(11), which abrogates all legally recognized privileges except that between attorney and client as grounds for excusing a report of suspected child abuse otherwise required by the act or for excluding evidence in a civil child protective proceeding resulting from a report made pursuant to the act.

construction contravenes the principle that the court should employ all rational means for ascertaining the truth." *Love, supra,* 604-605.

Finally, I would note that by placing the privilege in the testifying spouse who will most frequently be a married woman, Justice CAVANAGH may have inadvertently created a situation which actually heightens the vulnerability of the victim of a crime or a witness to a crime against the child of either.

I would affirm the decision of the Court of Appeals.

RILEY, J., concurred with BOYLE, J.

ARCHER, J., took no part in the decision of this case.