PEOPLE v SCHMIDT

Docket No. 201388. Submitted December 4, 1997, at Grand Rapids. Decided March 6, 1998, at 9:00 A.M. Leave to appeal denied, 457 Mich 881.

Gary P. Schmidt was charged in the Alcona Circuit Court with first-degree murder. The prosecution filed a pretrial motion in limine for the admission of testimony by Susan M. Craven regarding confidential communications allegedly made by the defendant to her before their Alabama common-law marriage was dissolved by an Alabama court judgment of divorce. The circuit court, John F. Kowalski, J., denied the motion, ruling that the proposed testimony was protected by the confidential communications privilege, MCL 600.2162(2); MSA 27A.2162(2). The prosecution appealed by leave granted.

The Court of Appeals *held*:

Although common-law marriages are proscribed in Michigan, Michigan recognizes a common-law marriage contracted in another state and extends to the marriage all the benefits of marriages solemnized by ceremony, including the confidential communications privilege, if, as in this case, the marriage is valid under the laws of that state.

Affirmed.

HUSBAND AND WIFE — CONFIDENTIAL COMMUNICATIONS PRIVILEGE — OUT-OF-STATE COMMON-LAW MARRIAGES.

The confidential communications privilege, which precludes a spouse from testifying without the consent of the other spouse regarding any confidential communications made during the marriage, applies in a Michigan court proceeding to communications made during a common-law marriage validly contracted in another state (MCL 600.2162[2]; MSA 27A.2162[2]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas Jay Weichel*, Prosecuting Attorney, for the people.

*William A. Pfeifer*, for the defendant.

Before: NEFF, P.J., and JANSEN and MARKEY, JJ.

PER CURIAM. The prosecutor appeals by leave granted the circuit court's order denying his pretrial motion in limine for admission of confidential communications allegedly made by defendant Gary Paul Schmidt to Susan Marie Craven during their common-law marriage, which was recognized by the state of Alabama, regarding the disappearance and death of defendant's first wife. We affirm.

I

Defendant and Craven met in Michigan and subsequently moved to Alabama together in 1985. The couple purchased a house together in Gulf Shores and, with the intent of marrying each other, they began living together as husband and wife. They held themselves out to the world as a married couple and were looked upon as being married. In June 1993, Craven filed for divorce. After a hearing before an Alabama circuit court, the judge ordered "[t]hat the bonds of matrimony previously existing between the plaintiff and defendant are dissolved and that they are forever divorced."

Subsequently, defendant was charged in Michigan with first-degree murder for the death of his prior wife, Cindy Schmidt. At the preliminary examination, defendant objected to the admission of testimony by Craven regarding statements allegedly made by defendant to Craven while the two lived as husband and wife in Alabama. Defendant claimed that the proposed testimony was protected by Michigan's confidential communications privilege pursuant to MCL 600.2162(2); MSA 27A.2162(2) because he and Craven had a valid common-law marriage at the time the

statements were made. The district court recognized the privilege and refused to allow the testimony.

Despite this ruling, defendant was bound over for trial. The prosecutor filed a motion in limine in the circuit court, arguing that defendant's statements to Craven were not privileged because common-law marriages are not recognized in Michigan. The circuit court denied the prosecutor's motion, ruling that Michigan's confidential communications privilege applied to a common-law marriage that took place and was recognized in another state. Therefore, the court ruled that the proposed testimony of Craven would not be allowed at defendant's murder trial. The prosecutor now brings this interlocutory appeal pursuant to MCR 7.203(B).

II

Michigan's common-law spousal testimonial privileges were codified by the Legislature at MCL 600.2162; MSA 27A.2162. This statute provides for two distinct privileges. The first type, a spousal privilege, bars one spouse from testifying for or against the other spouse without the other spouse's consent where the witness and the spouse are married at the time of trial. At issue here is the second type, a confidential communications privilege, which precludes a spouse from testifying without the consent of the other spouse with regard to any confidential communication that occurred during the marriage. This privilege applies whether the testimony is sought during the marriage or afterwards, as long as the communication occurred during the course of the marriage. *People v Zak*, 184 Mich App 1, 17; 457 NW2d 59 (1990). MCL 600.2162; MSA 27A.2162 contains no

exceptions with respect to the communications privilege. *People v Hamacher*, 432 Mich 157, 162; 438 NW2d 43 (1989).[1]

As correctly noted by the prosecutor, the modern trend is to interpret testimonial privileges strictly. *People v Fisher*, 442 Mich 560, 574; 503 NW2d 50 (1993); see *People v Love*, 425 Mich 691, 700; 391 NW2d 738 (1986) ("Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence.' ") (quoting *Trammel v United States*, 445 US 40, 50; 100 S Ct 906; 63 L Ed 2d 186 [1980]). Despite this, however, the spousal privileges continue to apply to valid marriages. See *Love, supra* at 699.

III

Although common-law marriages have been proscribed in Michigan since 1957, other states, including Alabama, recognize common-law marriages as valid and apply to them all marriage benefits, including the spousal privileges. See *Crawford v State*, 629 So 2d 745, 747 (Ala, 1993). Michigan follows the general rule that "a marriage valid where it is contracted is valid everywhere." *In re Toth Estate*, 50 Mich App 150, 152; 212 NW2d 812 (1973) (finding valid a mar-

---

[1] Of course, to fall under the marital communications privilege, the communication must be confidential. *People v Byrd*, 207 Mich App 599, 602; 525 NW2d 507 (1994). Although the prosecutor has requested a remand to make a separate record (a request also made to the trial court and denied), he has made no representation, either to the circuit court or to this Court, that Craven's proposed testimony is in regard to communications that fall outside the marital privilege. That is, the request to make a separate record has not been supported by any claim that some or all of Craven's testimony, if heard, would fall outside the privilege. As the proponent of the witness, the prosecutor presumably has knowledge of whether any of the testimony might be found to fall outside the privilege and yet he has failed to make any such claim.

riage between first-degree cousins married in Hungary). Accordingly, this state will recognize the validity of a common-law marriage contracted in another state that would be valid by the laws of that state. We thus turn to Alabama common law and the facts before us to determine whether defendant and Craven had a valid common-law marriage at the time defendant allegedly made the statements at issue.

A valid common-law marriage exists in Alabama when the following elements are present: (1) a present, mutual, agreement to enter permanently into the marriage relationship to the exclusion of all other relationships; (2) parties who are legally capable of making the contract of marriage; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. *Stringer v Stringer*, 689 So 2d 194, 195 (Ala, 1997). Here, defendant and Craven moved to Alabama with the present intent of marrying each other, and they lived together there as husband and wife. They held themselves out to the world as a married couple and were looked upon as being married.[2] Further, defendant and Craven were issued a final decree of divorce in Alabama, which presumes a prior legal marriage. We find no clear error in the circuit court's determination that defendant and Craven established a valid common-law marriage under Alabama law.

IV

The prosecutor urges this Court to hold that the confidential communications privilege should not be

---

[2] The prosecutor was offered an opportunity to challenge these facts, which support the circuit court's finding of a valid Alabama common-law marriage, but declined to do so.

extended to valid common-law marriages contracted in states that recognize that form of marriage. This precise question has never been addressed by the appellate courts of this state.

Until now, this Court has been presented only with challenges to the validity of other states' marriages regarding the issues of property and probate. See, e.g., *In re Borroughs Estate*, 194 Mich App 196; 486 NW2d 113 (1992) (recognizing validity of Texas common-law marriage for purposes of probate proceeding); *In re Brack Estate*, 121 Mich App 585; 329 NW2d 432 (1982) (recognizing validity of Georgia common-law marriage for purposes of probate proceedings; *Toth, supra* (recognizing validity of common-law marriage contracted in Hungary in property dispute). The case most similar to the instant case is *People v Van Dorsten (After Remand)*, 202 Mich App 293; 507 NW2d 831 (1993), in which this Court held that the spousal privilege did not apply to a bigamous marriage from Arizona: "We do not believe our Legislature intended to extend spousal immunity to marriages repugnant to *both* the law of this state and the law of the place where the marriage was entered into." *Id.* at 295 (emphasis added). A reasonable corollary is that spousal privileges apply to a marriage that was valid in either Michigan or the state where it was contracted.

We find further support for this conclusion in *People v Suarez*, 148 Misc 2d 95, 98; 560 NYS2d 68 (1990), a New York case in which the court found "persuasive" the defendant's argument that his common-law marriage in Ohio would entitle him to invoke New York's spousal privilege, even though New York does not recognize common-law marriages.

The court stated that "if the defendant entered into a valid common-law marriage in Ohio, New York will give that marriage full force and effect." *Id.*

The prosecutor argues that extending spousal privileges to common-law marriages is against the public policy of Michigan. This is a question properly left to the Legislature. Presumably, the Legislature could refuse to recognize common-law marriages if it chose to do so, as it has done with same-sex marriages in MCL 551.271(2); MSA 25.15(2) and MCL 551.272; MSA 25.16. We thus conclude that Michigan's spousal privileges must be extended to a common-law marriage contracted in a state that recognizes its validity.

V

Defendant and Craven had a valid common-law marriage in Alabama when defendant allegedly made certain statements about the death of his first wife. For purposes of MCL 600.2162(2); MSA 27A.2162(2), this common-law marriage is to be given the same legal significance as a marriage solemnized by ceremony. Accordingly, the circuit court properly determined that Craven may not testify regarding the confidential communications made by defendant during their common-law marriage.

Affirmed and remanded for trial. We do not retain jurisdiction.