PEOPLE v SZABO

Docket No. 311274. Submitted November 5, 2013, at Detroit. Decided
January 3, 2014, at 9:05 a.m. Leave to appeal sought.

Kevin T. Szabo was charged in the 25th District Court with one count
of assault with a dangerous weapon, MCL 750.82, and one count of
possessing a firearm during the commission of a felony (felony-
firearm), MCL 750.227b, after he allegedly entered the home of his
estranged wife, Michelle Szabo (Szabo), with a rifle and shot the
man who was in the house with her. At the beginning of the
preliminary examination, defense counsel stated his belief that
Szabo intended to invoke her spousal privilege under MCL
600.2162 to avoid testifying against defendant, but the court,
David J. Zelenak, J., allowed the prosecution to call Szabo to the
stand and examine her before the privilege issue could be argued.
After Szabo and a police detective testified, the court bound
defendant over on both counts. Defendant moved in the Wayne
Circuit Court to quash the information and dismiss the charges,
and the court, James Callahan, J., granted the motion on the
ground that Szabo could not be compelled to testify against
defendant. The prosecution appealed.

The Court of Appeals *held*:

MCL 600.2162 provides that the privilege not to be examined
as a witness against one's spouse in a criminal prosecution does
not apply in a cause of action that grows out of a personal wrong
or injury done by one to the other. Because defendant was charged
with felonious assault and felony-firearm arising from criminal
actions he allegedly committed against his wife, no spousal privi-
lege existed and Szabo could be compelled to testify against
defendant. Accordingly, defendant's motion to quash and dismiss
should have been denied.

Reversed and remanded for reinstatement of the charges.

CRIMINAL LAW — STATUTES — WITNESSES — SPOUSAL PRIVILEGE.

The statutory privilege not to be examined as a witness against one's
spouse in a criminal prosecution against the witness's consent
does not apply in a cause of action that grows out of a personal

wrong or injury done by one to the other; in such cases, a defendant's spouse may be compelled to testify against the defendant (MCL 600.2162(2), (3)(d)).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training and Appeals, for the people.

*Michael J. McCarthy, PC* (by *Michael J. McCarthy*), for defendant.

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM. The prosecution appeals as of right the circuit court's order dismissing the charges against defendant, Kevin T. Szabo, of assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We reverse and remand for reinstatement of the charges.

On January 30, 2011, defendant allegedly took a rifle into the home where his estranged wife, Michelle Szabo (Szabo), and her three children lived. A man named Michael was in the house with Szabo. Subsequently, the gun was fired and Michael was shot in the arm, but Szabo was not shot. The police were called and Detective Patrick Cutler from the Lincoln Park Police Department arrived at the home. Detective Cutler spoke to Szabo, who appeared visibly upset. There were bullet holes in two walls of the house. Defendant was initially charged with assault with intent to murder and felonious assault with regard to Michael, and felonious assault with regard to Szabo. He was also charged with felony-firearm.

Because defendant could not be located for about a year, the preliminary examination was conducted in the district court on February 14, 2012. At the start of the hearing, defendant's counsel stated: "It's my understanding that the, uh, government intends to call the wife of [defendant], and she—it's my understanding she's going to exercise her, uh, her spousal privilege." After the potential witnesses were sequestered, the prosecution called Szabo as its first witness. The court then asked: "You want to argue the spousal privilege, or call her first?" The prosecutor responded that he would call Szabo first. Thereafter, Szabo testified. Following her testimony, Detective Cutler testified. After Detective Cutler's testimony, the prosecution moved for a bindover on the felony-firearm and felonious assault charges with regard to Szabo. The charges arising from Michael's being shot were dismissed without prejudice.

Thereafter, defendant filed in the circuit court a "motion to quash and dismiss" and a supplemental brief in support of the motion. Defendant argued that Szabo was compelled to testify at the preliminary examination although she had asserted her spousal privilege, which constituted error requiring reversal. Further, defendant argued, without Szabo's testimony the prosecution could not proceed on the felonious assault and felony-firearm charges. And, citing MCL 600.2162, *People v Love*, 425 Mich 691; 391 NW2d 738 (1986), and *People v Sykes*, 117 Mich App 117; 323 NW2d 617 (1982), defendant argued that Szabo could not be compelled to testify at trial. Defendant attached to his motion Szabo's affidavit, which stated that she formally invoked her spousal privilege not to testify against defendant and that she did not fear him.

The prosecution responded to defendant's motion, arguing that Szabo's testimony at the preliminary

examination was voluntary and that she never asserted her spousal privilege; thus, any such privilege was waived. In any case, the prosecution argued, a spousal privilege did not exist because defendant was being prosecuted for actions growing "out of a personal wrong or injury done by one [spouse] to the other," as set forth in MCL 600.2162(3)(d). See also *People v Ellis*, 174 Mich App 139; 436 NW2d 383 (1988). Therefore, Szabo had no legal right to refuse to testify against her husband. Accordingly, the prosecution argued, defendant's motion should be denied.

On June 27, 2012, a hearing on defendant's motion was held. The circuit court concluded that Szabo could not be compelled to testify against defendant, and it therefore granted defendant's motion to quash and dismiss and entered an order dismissing the charges. This appeal followed.

The prosecution argues that, pursuant to MCL 600.2162(3)(d), no spousal privilege existed for Szabo to assert in this case because the charges against defendant arose from an alleged assault on her; therefore, her testimony could be compelled by the court and the charges should be reinstated. We agree.

The circuit court's decision to grant defendant's motion was premised on its interpretation of the spousal privilege statute, MCL 600.2162. Specifically, the circuit court held that Szabo was entitled to assert the spousal privilege established by MCL 600.2162(2) and could not be compelled to testify against defendant, her husband. We review de novo issues of statutory interpretation. *People v Plunkett*, 485 Mich 50, 58; 780 NW2d 280 (2010). Further, "[a] district court magistrate's decision to bind over a defendant and a trial court's decision on a motion to quash an information are

reviewed for an abuse of discretion." *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011).

The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). The first step in ascertaining the Legislature's intent is to review the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The Legislature is presumed to have intended the meaning it plainly expressed and, therefore, clear statutory language must be enforced as written. *Dowdy*, 489 Mich at 379; *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

In Michigan, the privilege not to testify against a spouse in criminal prosecutions is statutory and is set forth at MCL 600.2162, which provides in pertinent part:

> (2) In a criminal prosecution, a husband shall not be examined as a witness for or against his wife without his consent or a wife for or against her husband without her consent, except as provided in subsection (3).

> (3) The spousal privileges established in subsections (1) and (2) and the confidential communications privilege established in subsection (7) do not apply in any of the following:

> \* \* \*

> (d) In a cause of action that grows out of a personal wrong or injury done by one to the other or that grows out of the refusal or neglect to furnish the spouse or children with suitable support.

Through the years the spousal privilege has been modified, see *Love*, 425 Mich at 700,[1] and our current statute is the result of two amendments: 2000 PA 182, effective October 1, 2000, and 2001 PA 11, effective May 29,

---

[1] For example, 1885 PA 211 added the "personal wrong or injury" exception. *Love*, 425 Mich at 700 n 11.

2001. Before the 2000 amendment, in criminal prosecutions, the testimonial privilege was vested in the non-witness spouse; i.e., the criminal defendant spouse could prevent the witness spouse from providing testimony unless an exception applied. Now, this testimonial privilege is vested in the witness spouse. *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004). However, since these amendments, neither this Court nor our Supreme Court has addressed whether an alleged victim-spouse[2] is vested with a spousal privilege when MCL 600.2162(3)(d) is applicable ("[i]n a cause of action that grows out of a personal wrong or injury done by one [spouse] to the other [spouse]") and whether the alleged victim-spouse can be compelled to testify in the related criminal prosecution. Nevertheless, a review of previous caselaw proves helpful to our analysis of this issue.

In *Sykes*, 117 Mich App 117, this Court considered a prior version of the spousal privilege statute, which vested the privilege in the criminal defendant spouse " 'except . . . where the cause of action grows out of a personal wrong or injury done by one to the other . . . .' "[3] *Id.* at 121. In that case, the defendant husband allegedly assaulted his wife with a gun and the trial court compelled her to testify, although she did not want to testify. *Id.* at 120, 123. The *Sykes* Court held

---

[2] In this opinion we distinguish between a "witness-spouse" and a "victim-spouse" because a victim-spouse is always a witness, but a witness-spouse is not always a victim. When the "personal wrong or injury exception" applies, the "witness-spouse" is also the "victim-spouse."

[3] This version of the spousal privilege statute, MCL 600.2162 as enacted by 1961 PA 236, provided: "A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except . . . where the cause of action grows out of a personal wrong or injury done by one to the other . . . ."

that "the statutory exception to the spousal privilege is a permissive one" that "allows the victim-spouse to testify against the defendant-spouse if the victim so desires." *Id.* at 122. Further, the Court held, the statutory exception was for the benefit of the victim-spouse and it was "the victim's option to either testify or raise the spousal privilege." *Id.* at 123. Accordingly, the *Sykes* Court held, compelling the victim-wife to testify constituted error. *Id.*

In *Love*, 425 Mich 691, a plurality opinion, our Supreme Court considered whether a victim-spouse could be compelled to testify against the criminal defendant-spouse under the same prior version of MCL 600.2162 at issue in *Sykes;* i.e., when the criminal defendant-spouse was the holder of the privilege except when the cause of action grew out of a personal wrong or injury done by one to the other. *Love*, 425 Mich at 694, 696. In that case, the defendant allegedly kidnapped his estranged wife after the defendant shot and killed her friend. *Id.* at 694-695. The victim-wife did not want to testify against her husband, but the trial court compelled her to testify. *Id.* at 694, 706. Justice CAVANAGH, with Justice LEVIN concurring, held in the lead opinion that, after the defendant asserted his spousal privilege, his wife could not testify regarding the killing of her friend because the "personal wrong" exception did not apply; i.e., those crimes did not "grow out of" the personal injury inflicted upon the defendant's wife. *Id.* at 702-703. Justice CAVANAGH noted that the defendant's wife could voluntarily testify "concerning the kidnapping prosecution since it grew out of a personal wrong done to her by defendant," but she could not be compelled to testify against the defendant with regard to the kidnapping. *Id.* at 696, 706-707. Justice CAVANAGH quoted this Court's opinion in *Sykes*, 117 Mich App at 122-123, in

support of his conclusion that if the victim-spouse "did not wish to testify, and the refusal did not stem from her fear of the defendant, she should not have been compelled to testify." *Love*, 425 Mich at 707-708.

However, Justice BOYLE authored a dissenting opinion in *Love*, in which she stated that, if an exception to the spousal privilege statute is applicable, the victim-spouse may be compelled to testify. *Id.* at 714. Justice BOYLE explained that "the Legislature made the spouse *conditionally* competent, that condition being the consent of the other spouse." *Id.* at 715. Thus, "the statute is . . . a rule of incompetency which vests in the party-spouse the ability to remove the incompetency, and permits the nonconsenting party-spouse to prevent the witness from being called to the stand." *Id.* at 715-716. Justice BOYLE continued, "It follows that in the exceptions to this rule, the Legislature intended to remove the conditional disability of the witness-spouse so that the witness-spouse is as competent and compellable as any other witness. MRE 601; MCR 2.506. No other legislative intent can be so clearly established." *Id.* at 716. And Justice BOYLE disagreed with Justice CAVANAGH's adoption of the statement in *Sykes* that the exceptions were carved out for the benefit of the wife who wished to testify; rather, the exceptions were "created by the rule of necessity, 'partly for the protection of the wife in her life and liberty, and partly for the sake of public justice.' " *Id.* at 716 (citation omitted). Thus, Justice BOYLE concluded, if an exception to the spousal privilege was applicable, the victim-spouse could be compelled to testify. Chief Justice WILLIAMS, with Justice BRICKLEY concurring, agreed with Justice BOYLE "that a spouse may be compelled to testify[.]" *Love*, 425 Mich at 709. And Justice RILEY concurred with Justice BOYLE's dissenting opinion. *Id.* at 717. Thus, four

Justices held that a victim-spouse could be compelled to testify against the criminal defendant-spouse when an exception to the spousal privilege was applicable.

In *Ellis*, 174 Mich App at 139, this Court also considered the prior version of the spousal privilege at issue in *Love* and *Sykes*, which vested the privilege in the criminal defendant-spouse " 'except . . . where the cause of action grows out of a personal wrong or injury done by one to the other . . . .' " *Id.* at 144, quoting MCL 600.2162 as enacted by 1961 PA 236. In that case, the defendant allegedly kidnapped and committed first-degree criminal sexual conduct against his wife. *Id.* at 142. The defendant's wife indicated that she did not want to testify against her husband because of a threatening letter she had received from him and because she was afraid of how he would react to her testimony. *Id.* at 143. The trial court compelled her to testify. *Id.* On appeal, the defendant argued that his wife should not have been compelled to testify against him. *Id.* at 144. This Court disagreed, citing *Love*, 425 Mich at 714-717 (BOYLE, J., dissenting), and noting that "four members of the Supreme Court subscribed to the proposition stated in Justice BOYLE's dissenting opinion that, where an exception to the prohibition in [MCL 600.2162] applies, the defendant's wife could be required to testify." *Ellis*, 174 Mich App at 144-145.

In *People v Warren*, 462 Mich 415; 615 NW2d 691 (2000), our Supreme Court considered an amended version of the spousal privilege statute, which vested the privilege in the criminal defendant-spouse " 'except . . . [i]n a cause of action that grows out of a personal wrong or injury done by one to the other . . . .' "[4] *Id.* at 422, quoting MCL 600.2162 as amended by 1994 PA 67 (emphasis omitted). In that

---

[4] The statute provided in relevant part:

case, the defendant's wife voluntarily testified against her husband with regard to several crimes he was later convicted of perpetrating against her and her mother. *Id.* at 417. The issue in the *Warren* case, however, was whether the defendant's wife could testify about the defendant's alleged crimes against her mother. *Id.* at 430-431. The *Warren* Court held that, because the decision in *Love* lacked a majority holding with regard to the application of the "personal wrong or injury" exception as it relates to testimony regarding crimes against third parties, *Love* did not constitute binding precedent on that issue. *Warren*, 462 Mich at 426-427. The Court explained: "The 'grows out of' wording requires a connection between the cause of action and the harm or injury committed against the spouse. However, the phrase does not limit spousal testimony to those crimes of which the spouse was the direct victim." *Id.* at 428. The *Warren* Court did not consider whether the defendant's wife could have been compelled to testify against the defendant regarding the crimes he allegedly committed against her because her testimony was voluntary. *Id.* at 417.

The spousal privilege at issue in this case is not the same statute as the versions at issue in the *Sykes*, *Love*, *Ellis*, and *Warren* cases. Under the current version, the witness-spouse is the holder of the testimonial privilege and has the legal right not to be compelled to testify in

---

(1) A husband shall not be examined as a witness for or against his wife without her consent or a wife for or against her husband without his consent, except as follows:

\* \* \*

(d) In a cause of action that grows out of a personal wrong or injury done by one to the other .... [MCL 600.2162, as amended by 1994 PA 67.]

certain criminal prosecutions against a defendant-spouse; i.e., the witness-spouse must consent to testify. As the *Love* Court noted: " 'Testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence.' " *Love*, 425 Mich at 700, quoting *Trammel v United States*, 445 US 40, 50; 100 S Ct 906; 63 L Ed 2d 186 (1980) (quotation marks and ellipses omitted). However, the spousal privilege statute has also been amended in another significant way. The versions of the spousal privilege statute at issue in *Sykes, Love, Ellis,* and *Warren* provided an "exception" to the spousal privilege, which permitted a victim-spouse to testify without the consent of the criminal defendant-spouse when the cause of action against the defendant-spouse grew out of a personal wrong or injury committed against the victim-spouse. But that previous statute did not explicitly state that the spousal privilege does not apply in certain legal matters or litigations, as the current statute does.

More specifically, the spousal privilege statute at issue here establishes the spousal privilege—the legal right not to testify—in subsection (2), but that legal right is specifically limited by subsection (3), which states that the spousal privilege established in subsection (2) "do[es] not apply" in certain cases, including "[i]n a cause of action that grows out of a personal wrong or injury done by one [spouse] to the other . . . ." MCL 600.2162(3)(d). Thus, the previous spousal privilege statute at issue, for example, in *Sykes* was significantly different than this spousal privilege statute. As a consequence, the *Sykes* Court concluded that the "personal wrong or injury" exception to the spousal privilege was "permissive" and was for the benefit of the victim-spouse; i.e., the victim-spouse could not be prevented from testifying by the criminal defendant-

spouse when an exception applied. *Sykes*, 117 Mich App at 122-123. More significantly, the *Sykes* Court also interpreted the statute as providing that, when the exception applied, the victim-spouse became the holder of the spousal privilege. That is, the *Sykes* Court specifically held that when the exception applied, it was "the victim's option to either testify or raise the spousal privilege." *Id.* at 123. Thus, the *Sykes* Court held that the victim-spouse could not be compelled to testify because the victim-spouse became the holder of the spousal privilege when the "personal injury or wrong" exception applied. *Id.* at 122-123. And because the victim-spouse in *Sykes* "raised the marital privilege," she could not be compelled to testify. *Id.* at 123. The lead opinion in the *Love* case adopted the holding in *Sykes*. See *Love*, 425 Mich at 707.

The spousal privilege statute at issue here specifically denies the victim-spouse a testimonial privilege in a case that grew out of a personal wrong or injury done by the defendant-spouse to the victim-spouse. That is, MCL 600.2162(3) provides that the "spousal privileges established in subsections (1) and (2) . . . do not apply in any of the following" specific cases set forth in subsection (3). When such an "exception" exists the effect, then, is not that the ownership of the spousal privilege transfers from the one spouse to the other as in the *Sykes* case; rather, the effect is that no spousal privilege exists at all. The addition of the exclusionary words "do not apply" to the spousal privilege statute evinces the Legislature's intent not to abrogate the general duty a witness has to testify about matters within the witness' knowledge in certain cases involving spouses including, as in this case, when the cause of action grows out of a personal wrong or injury done by the defendant-spouse against the victim-spouse. Unambiguous statutory lan-

guage must be enforced as written. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

In this case, defendant was charged with felonious assault and felony-firearm arising from criminal actions he allegedly committed against his wife. Pursuant to MCL 600.2162(3)(d), defendant's wife was not vested with a spousal privilege; thus, her consent to testify was not required and she could be compelled to testify against defendant in this criminal prosecution. Accordingly, defendant's motion to quash and dismiss should have been denied.

Reversed and remanded for reinstatement of the criminal charges against defendant. We do not retain jurisdiction.

M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ., concurred.