# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ORLANDO ARNEZ BURTON,

Defendant-Appellant.

UNPUBLISHED
July 21, 2015

No. 320632
Wayne Circuit Court
LC No. 13-000312-FC

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

At defendant's second trial, a jury convicted him of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to 5 to 35 years' imprisonment for the assault conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant was convicted of assaulting John Rankin with a handgun, shooting him four times, near defendant's Detroit home during the early morning hours of July 14, 2012. The shooting occurred less than an hour after defendant's wife called 911 to report an attempted breaking and entering at their home. The prosecution theorized that while Rankin sat in his van after smoking crack cocaine in a nearby vacant garage, defendant walked up to Rankin's window, armed with a .45-caliber Glock semiautomatic handgun, believing that he was the person who had vandalized his house. Rankin testified that defendant ordered him out of the van at gunpoint for an "a** whipping." Rankin ultimately managed to escape through the side passenger cargo door but was shot multiple times as he tried to flee. Rankin identified defendant in a photographic array as the shooter, and he was certain of his identification. Shell casings and a bullet found at the scene were consistent with a .45-caliber Glock semiautomatic handgun. Although defendant had a concealed weapons permit for .45-caliber Glock handgun, the gun was never recovered. The defense theory at trial was that defendant was misidentified as the shooter and that Rankin's testimony was unreliable. Defendant presented two witnesses to support his alibi defense that he was at a friend's house at the time of the shooting.

Defendant's first trial ended in a mistrial after the jury could not reach a verdict. At the first trial, defendant's wife was called as a prosecution witness and testified. She did not assert her spousal privilege, and the defense did not object to her testimony. At defendant's second

-1-

trial, his wife sought to exercise her spousal privilege to not testify against defendant. The trial court ruled that she had waived her privilege by testifying at the first trial.

In his sole issue on appeal, defendant argues that the trial court erred by denying his wife's request to assert her spousal privilege at the second trial. We review a trial court's evidentiary rulings for an abuse of discretion, but preliminary questions of law involving the admissibility of evidence are reviewed de novo. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

The spousal privilege statute, MCL 600.2162(2), provides in relevant part that "[i]n a criminal prosecution, a husband shall not be examined as a witness for or against his wife without his consent or a wife for or against her husband without her consent" unless a statutory exception applies. "[T]he witness-spouse is the holder of the testimonial privilege and has the legal right not to be compelled to testify in certain criminal prosecutions against a defendant-spouse . . . ." *People v Szabo*, 303 Mich App 737, 746-747; 846 NW2d 412 (2014). In other words, the privilege belongs to the witness-spouse, not to the defendant-spouse. *Id*. at 742.

Recently, in *People v Allen* ___ Mich App ___; ___ NW2d ___ (Docket No. 318560, issued April 30, 2015), this Court addressed whether a defendant has standing to challenge a trial court's failure to expressly inform a testifying spouse about his or her testimonial privilege before the spouse testifies. For guidance, this Court discussed a Seventh Circuit Court of Appels decision that addressed an analogous issue, observing:

> The Seventh Circuit Court of Appeals . . . has addressed a similar issue in the context of the federal spousal testimonial privilege, which is essentially the same as Michigan's privilege in that the testifying spouse is the holder of the privilege. See e.g. *Trammel v United States*, 445 US 40, 53; 100 S Ct 906; 63 L Ed 2d 186 (1980). Specifically, in *United States v Brock*, 724 F3d 817, 823 (CA 7, 2013), the defendant's wife testified at a pre-trial detention hearing. Subsequently, during the defendant's criminal trial, the district court determined that the wife waived her testimonial privilege by testifying at the detention hearing. On appeal, the defendant argued that the district court erred in determining that his wife waived her privilege. The Seventh Circuit held that the defendant did not have standing to challenge the district court's finding because he was not the holder of the privilege, explaining, "*because the defendant-spouse could not invoke the privilege, he also could not appeal a rejection of the privilege.*" *Id*. at 823. [*Allen*, ___ Mich App at ___, slip op at 7 (emphasis added; footnote omitted).]

The *Allen* Court concluded that "because defendant could not invoke [his wife's] testimonial privilege, he has no standing to appeal the court's determination that [the wife] did not assert the privilege. *Id*. at ___, slip op at 8.

In this case, as in *Allen*, defendant's challenge solely concerns his testifying wife's spousal privilege. As discussed in *Allen* and the cases cited therein, defendant is not the holder of the privilege, and therefore, he has no standing to challenge the trial court's rejection of it. Accordingly, defendant does not have standing to raise this issue on appeal. *Id*.

Furthermore, even if defendant had standing to raise this issue, any error in the trial court's ruling that defendant's spouse waived the privilege by testifying at defendant's first trial was harmless. An error in admitting evidence is presumed to be harmless, and defendant bears the burden of proving otherwise. *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999). This Court only reverses if, "'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id.* at 495-496, quoting MCL 769.26. Initially, defendant concedes that had his wife not testified at the second trial, her trial testimony from the first trial could have been admitted under MRE 804(b). Defendant makes much of the fact that, by the second trial, the prosecutor had obtained their cell phone records and utilized them to question his wife about her attempted contact with him on the night of the offense. At the first trial, defendant's wife testified that she attempted to contact defendant by phone, but the prosecutor did not have the benefit of the specific time or duration of any call. Defendant has not, however, argued or established that the cell phone records would not have been independently admissible at the second trial even if his wife had not testified. Because these phone records were admissible at the second trial, regardless of the wife testifying, defendant's argument that "the jury would not have been aware of the times she had made calls to defendant" is not substantiated. In sum, defendant has not identified any outcome-determinative testimony provided by his wife at the second trial.

Moreover, defendant's guilt was established by other evidence and testimony. Defendant does not dispute that Rankin's testimony was sufficient to support defendant's identification as the shooter. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Rankin testified that defendant was within arm's length when he observed him and that he looked at defendant's completely exposed face and got a good look. Rankin provided a description of the shooter to the police that was consistent with defendant. Rankin did not identify any suspect in one photo array that did not include defendant's photo, and he identified defendant within three to five seconds when viewing a second array that included defendant's photo. Rankin stated that he was certain of his identification. In addition, the shooter had approached Rankin on foot, which suggested that he lived in the area, and Rankin's van was parked two houses down from defendant's house. The shooting occurred less than an hour after defendant's wife made a 911 call regarding an attempted breaking and entering at defendant's house, thereby explaining why defendant would confront Rankin, who was parked nearby. In addition, nine .45-caliber shell casings and a .45-caliber fired bullet were found at the scene, and the casings were consistent with having been fired by a .45-caliber Glock semiautomatic handgun. Defendant had had a concealed weapons permit and owned several registered guns, including a .45-caliber Glock. All of his firearms, except the Glock, were located during a search of defendant's home and defendant was unable to explain what happened to the Glock.

Considering the limited nature of defendant's spouse's testimony and the additional untainted evidence of defendant's guilt, it does not affirmatively appear more probable than not

that defendant's spouse's testimony was outcome determinative. Accordingly, any error in admitting the testimony was harmless. *Lukity*, 460 Mich at 495-496.

Affirmed.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello