*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

LYLE HOWARD HILL, JR.,

        Defendant-Appellee.

FOR PUBLICATION
December 3, 2020
9:00 a.m.

No. 351828
Wayne Circuit Court
LC No. 19-006327-01-FC

Before: BOONSTRA, P.J., and MARKEY and FORT HOOD, JJ.

BOONSTRA, P.J.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order permitting Taylor Hill (Taylor) to assert spousal privilege and to refuse to testify against defendant, her husband. We reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2019, Taylor and defendant held a birthday party at their home for one of their children. Taylor's brother, Daniel Simmons (Simmons), and Taylor's mother, Sonya Harris (Harris), attended the party. According to testimony presented before a grand jury in this matter, defendant was irritable throughout the party, and at some point, he and Taylor began arguing about the music being played on Taylor's phone. As the argument grew heated, Harris removed the children from the vicinity. At some point during the argument, defendant charged at Taylor and poked her in the face with his fingers. Taylor sought assistance from Simmons because she believed the argument would escalate.[2] While Simmons was initially reluctant to intervene, he did stand next to defendant and Taylor and told them to relax. His efforts were unsuccessful, however, and defendant and Simmons began to grapple physically, at one point causing Simmons's arm to

---

[1] *People v Hill*, unpublished order of the Court of Appeals, entered January 24, 2020 (Docket No. 351828).

[2] Taylor and defendant had had physical fights previously in their relationship.

break through a window. Defendant drew a firearm and shot Simmons. Simmons's wounds were not fatal.

Defendant was charged with assault with intent to murder (AWIM), MCL 750.83, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, discharge of a firearm in a building, MCL 750.734b(3), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was not charged with an offense against Taylor.

Taylor testified before a grand jury and described the incident. Although she was willing to testify before the grand jury, defendant later moved to permit Taylor to assert spousal privilege under MCL 600.2162(2) and to refuse to testify at trial. At the motion hearing, Taylor informed the trial court that she would assert the spousal privilege if it were available to her. The trial court granted defendant's motion. The effect of that ruling was to deny the admission of Taylor's testimony on grounds of spousal privilege. This appeal followed.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to admit or to deny the admission of evidence, but we review de novo questions of law concerning the admissibility of that evidence, such as whether admission of the evidence is precluded by the assertion of privilege. See *People v Allen*, 310 Mich App 328, 341; 872 NW2d 21 (2015), rev'd in part on other grounds 499 Mich 307 (2016). We review de novo issues of statutory interpretation. *People v Davis*, 310 Mich App 276, 286; 871 NW2d 392 (2015). "Our overriding goal for interpreting a statute is to determine and give effect to the Legislature's intent." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). "The first step in ascertaining the Legislature's intent is to review the specific language of the statute." *People v Szabo*, 303 Mich App 737, 741; 846 NW2d 412 (2014). "The Legislature is presumed to have intended the meaning it plainly expressed and, therefore, clear statutory language must be enforced as written." *Id*.

## III. ANALYSIS

The prosecution argues that the trial court erred by granting defendant's motion because the "spousal wrong" exception to spousal privilege applies in this case. We agree.

"In a criminal prosecution, a husband shall not be examined as a witness for or against his wife without his consent or a wife for or against her husband without her consent, except as provided in subsection (3)." MCL 600.2162(2). Accordingly, in criminal proceedings, the spousal privilege is vested with the witness-spouse *unless* an exception in MCL 600.2162(3) applies. *Szabo*, 303 Mich App at 748. Under the spousal wrong exception, "[t]he spousal privilege[] established in subsection[] . . . (2) . . . do[es] not apply . . . [i]n a cause of action that grows out of a personal wrong or injury done by one to the other . . . ." MCL 600.2162(3)(d).

Our Supreme Court has on several occasions interpreted the scope of the spousal wrong exception. In *People v Love*, 425 Mich 691; 391 NW2d 738 (1986), the defendant (Abner Love), suspected his wife of having an affair with a friend. *Id*. at 694-695 (opinion by CAVANAGH, J.). Love shot the friend, killing him, and then drove around with his (Love's) wife at gunpoint. *Id*. at

695. Love was convicted of murder and felony-firearm regarding his conduct against the friend and was convicted of kidnapping regarding his conduct against his wife. *Id*. at 693-694. At trial, Love moved to suppress his wife's testimony, asserting spousal privilege.[3] *Id*. at 695. The trial court denied the motion, and Love's wife was compelled to testify. *Id*. at 695-696. The parties agreed on appeal that the spousal privilege did not apply to the kidnapping charge because it clearly grew out of a personal wrong done to her by Love and thus was subject to the spousal wrong exception. *Id*. at 696. The issue before the Court was whether the murder and felony-firearm charges were also subject to the spousal wrong exception.

The Supreme Court issued three opinions in *Love*, each joined by only two Justices.[4] Two opinions (encompassing a total of four Justices) held, albeit for different reasons, that the spousal wrong exception did not apply to the murder and felony-firearm charges. In the lead opinion, Justice CAVANAGH (joined by Justice LEVIN) concluded that the spousal wrong exception only applied if the particular offense charged was for the injury inflicted upon one spouse by the other. *Love*, 425 Mich at 702-706. Therefore, because Love's murder and felony-firearm charges were not for injury inflicted upon Love's wife, the exception was not applicable. *Id*.

Chief Justice WILLIAMS (joined by Justice BRICKLEY) reached the same result, but for the reason that "a cause of action cannot 'grow[] out of a personal wrong or injury done by one to the other' that did not occur at the time of the 'cause of action' (murder). Something cannot 'grow[] out of' something that did not exist." *Id*. (second and third alterations in original). Therefore, the two opinions agreed that the spousal wrong exception was not implicated with respect to the murder (and related felony-firearm) charge but disagreed about whether that was because the murder charge was not for an injury inflicted on Love's wife or because Love kidnapped his wife *after* completing the murder.[5]

Subsequently, in *People v Vann*, 448 Mich 47; 528 NW2d 693 (1995), our Supreme Court seemingly approved of Chief Justice WILLIAMS's position in Love, noting that "[i]n *Love*, the kidnapping of the defendant's wife occurred *after* the murder of the third party. Accordingly, the third party's cause of action did not "grow out of" the personal injury or wrong to the wife." *Id*. at 52. The defendant in *Vann*, Lawrence Vann, was convicted of felonious assault and felony-firearm after Vann's wife was permitted to testify at trial. *Id*. at 48-50. Both offenses related to Vann's conduct toward a third-party victim; Vann was not charged with an offense against his

---

[3] Originally, the spousal privilege in criminal proceedings was vested with the defendant-spouse, requiring his or her consent for the witness-spouse to testify unless an exception was applicable. MCL 600.2162, as enacted by 1961 PA 236. Since October 2000, however, the spousal privilege has been vested in the witness-spouse. See MCL 600.2162(2), as amended by 2000 PA 182 (effective October 1, 2000) and 11 PA 2001 (effective May 29, 2001).

[4] One Justice did not participate. *Id*. at 709.

[5] Justice BOYLE (joined by Justice RILEY) authored a third opinion that would have affirmed the Court of Appeals' holding that the spousal wrong exception applies when a crime against a third person occurs during the same criminal transaction as a crime committed against the witness-spouse. *Love,* 425 Mich at 716 (BOYLE, J., dissenting).

wife. *Id* at 53 (CAVANAGH, J., dissenting). However, Vann's wife was present for the third-party assault and Vann assaulted his wife contemporaneously with his assault of the third party. *Id*. at 49 (opinion of the Supreme Court). Distinguishing the case from *Love*, the Supreme Court stated:

> Here, however, the prosecution's evidence indicated that there was an assault on the defendant's wife, and that it occurred contemporaneously with the assault on the third party. In other words, unlike the situation in *Love*, the offense committed against the third party in the instant case did "grow out of" the personal wrong or injury done by the defendant to his wife. [*Id*. at 52.]

The Court in *Vann* did not discuss the competing rationales of the various opinions in *Love* and appears to have errantly characterized Chief Justice WILLIAMS's position as that of the *Love* majority. Nonetheless, by affirming the trial court's decision to permit Vann's wife to testify against Vann, the Supreme Court appears to have put to rest Justice CAVANAGH's assertion in *Love* that the spousal wrong exception applies only when a defendant is charged with crimes committed against a spouse. Instead, the spousal privilege was found to be unavailable even though the charges were not for injuries to Vann's wife.

In *People v Warren*, 462 Mich 415; 615 NW2d 691 (2000), the Supreme Court noted that "*Love* lacks a majority holding. It does not serve as binding precedent." It explained that the opinions of Justice CAVANAGH and Chief Justice WILLIAMS in *Love* "cannot be reconciled; they have no common denominator except in result." *Id*. at 427. The Court also noted that *Vann*'s comments regarding Chief Justice WILLIAMS's temporal-sequence test were dicta because the defendant's offenses against his wife and the third party in *Vann* occurred simultaneously and as part of a single criminal act, such that the *Vann* Court "did not employ the temporal-sequence test in reaching its conclusion." *Id*. at 426-427.

The Court in *Warren* then expressly rejected Justice CAVANAGH's position (as well as Justice BOYLE's position) in *Love* and stated that "[t]he 'grows out of' wording requires a connection between the cause of action and the harm or injury committed against the spouse. However, the phrase does not limit spousal testimony to those crimes of which the spouse was the *direct* victim." *Id*. at 428 (emphasis added). Consistent with Chief Justice WILLIAMS's position, the Court affirmed that the spousal wrong exception may apply even when the charge was not for injury to the witness-spouse, *Warren*, 462 Mich at 430-431, and it noted that "the temporal sequence test set out in Chief Justice WILLIAMS' *Love* concurrence has support in the language of the statute." *Id*. at 429. The Court continued:

> Additionally, we read the exception to allow a victim-spouse to testify about a persecuting spouse's precedent criminal acts where (1) the underlying goal or purpose of the persecuting spouse is to cause the victim-spouse to suffer personal wrong or injury, (2) the earlier criminal acts are committed in furtherance of that goal, and (3) the personal wrong or injury against the spouse is ultimately completed or "done."

> Thus, where a persecuting spouse's criminal activities have roots in acts ultimately committed against the victim-spouse, those preparatory crimes constitute "cause[s] of action that grow[] out of a personal wrong or injury done by

one to the other . . . ." M.C.L. § 600.2162(d); MSA 27A.2162(1)(d). This is because the underlying intent, the "seed" from which the other criminal acts grew, was the personal wrong or injury done to the spouse. [*Id*. at 698 (footnote omitted).]

There is a glaring issue with applying any of the above cases to the case before us, i.e., they were all decided before the effective date of the amendment of MCL 600.2162 in 2000 to provide that the spousal privilege vested in the witness-spouse, rather than in the defendant-spouse. The procedural posture of this case is thus substantially different from that of *Love, Vann,* or *Warren*. Rather than having a defendant seeking to assert a statutory right to preclude spousal testimony against him, the prosecution in this case is seeking to compel the testimony of a witness against him. Moreover, because those cases all predated the 2000 amendment of MCL 600.2162, none of them addressed whether a witness-spouse in whom the spousal privilege is vested (as under the current statutory scheme) may be compelled to testify when the spousal privilege is inapplicable.[6]

But this Court did have occasion in *Szabo* to apply the post-amendment language of MCL 600.2162. The defendant in *Szabo* allegedly took a rifle into the home of his estranged wife. The gun was fired; the estranged wife was not shot, but another man who was present was shot in the arm. The defendant was charged with assault with intent to murder and felonious assault with regard to the man, as well as felonious assault with regard to the estranged wife. The estranged wife testified at the defendant's preliminary examination, although whether she did so voluntarily was disputed. The prosecution moved for a bindover on the charges relating to the estranged wife,[7] and the defendant moved to dismiss those charges. The trial court concluded that the estranged wife could not be compelled to testify against the defendant, and it therefore granted the defendant's motion to dismiss.

This Court held on appeal that MCL 600.2162 "specifically denies the victim-spouse a testimonial privilege in a case that grew out of a personal wrong or injury done by the defendant-spouse to the victim-spouse" and permits a trial court to compel that spouse's testimony. *Szabo*, 303 Mich App at 748-749. *Szabo* thus appears to have answered the question that was necessarily left unanswered in the Supreme Court cases applying the earlier statutory scheme.

---

[6] Even under the previous version of the statute (which vested the spousal privilege in the defendant-spouse), it is unclear from the Supreme Court caselaw whether and when a witness-spouse could be compelled to testify. In *Vann* and *Warren*, the spousal testimony was voluntary. And in *Love*, Justice CAVANAGH's opinion suggested that a witness-spouse could voluntarily testify but that she could not be compelled to testify. Chief Justice WILLIAMS and Justice BOYLE disagreed about whether the spousal wrong exception applied (and therefore about whether the spousal privilege applied), but agreed that a spouse may be compelled to testify. See *Love*, 425 Mich at 696, 708-709 (opinions by CAVANAGH, J. and WILLIAMS, C.J.); *id*. at 714 (opinion by BOYLE, J.). See also *Szabo*, 303 Mich App at 744-745 ("Thus, four Justices held that a victim-spouse could be compelled to testify against the criminal defendant-spouse when an exception to the spousal privilege was applicable.").

[7] The charges relating to the shooting of the other man were dismissed without prejudice.

We note, however, that *Szabo* also is not on all fours with the case before us. Specifically, the only charges that remained pending in *Szabo* were the charges relating to the spousal-witness, i.e., the estranged wife. The charges relating to the shooting of the other man were no longer pending. Therefore, the Court in *Szabo* was only addressing MCL 600.2162 in the context of charges directly relating to the spousal-witness; it was not addressing the statute in the context of charges relating to third parties that arguably "grew out of" a personal wrong or injury done to the spousal-witness.

We thus are left with no authority that definitely answers the pertinent question in the precise procedural context of the case before us. Nonetheless, considering the body of the pertinent caselaw in its totality, we conclude that the trial court erred by holding that Taylor could assert the spousal privilege. The trial court concluded that "the spousal privilege is available for [Taylor] to take if she wishes because [defendant is] not charged with anything related to her in this case." The trial court's holding is directly contrary to the Supreme Court's decisions in *Vann* and *Warren*. Like in *Vann* and *Warren*, Taylor's testimony at defendant's trial would relate to several offenses allegedly committed against a third party (Simmons) that occurred contemporaneously with (or after) his alleged assault on her. According to the allegations, defendant made physical contact with Taylor, and Taylor feared for her safety, causing her to ask Simmons for help. When Simmons attempted to provide that assistance, defendant shot him. Also as in *Vann*, defendant was not charged with an offense against Taylor. And as in *Warren*, defendant's purpose in allegedly shooting Simmons was to facilitate his assault against Taylor. We conclude under these circumstances, and consistent with *Vann* and *Warren*, that the charges against defendant grew out of an alleged personal wrong or injury to Taylor, and therefore that the spousal wrong exception prevents Taylor from asserting spousal privilege. MCL 600.2162(3)(d).

Moreover, *Szabo* held, under the current statutory scheme, that "defendant's wife was not vested with a spousal privilege; thus, her consent to testify was not required and she could be compelled to testify against defendant in this criminal prosecution." *Szabo*, 303 Mich App at 749. Similarly in this case, Taylor was not vested with a spousal privilege because the spousal wrong exception applied. Therefore, her consent to testify was not required, and she could be compelled to testify. By reaching a contrary conclusion, the trial court erred.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood